### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **JOSE ESCALERA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED;** *Plaintiff,* | § § § § § § § § § § § § § § | **MO:22-CV-00176-DC** |
| **v.** | | |
| **MURPHY WELL CONTROL, LLC, BRANDON MURPHY,** *Defendants.* | | |

### ORDER

In August 2022, Plaintiff Jose Escalera sued Murphy Well Control, LLC ("Company"), alleging unpaid overtime and a collective action under the FLSA. Plaintiff alleges he and others were misclassified as independent contractors. Over the next nine months, ten additional claimants, including Aschton Shropshire, William Pruit, and Ivan Salcido ("Opt-In Plaintiffs"), joined Plaintiff's suit. In June 2023, Plaintiff amended his complaint, adding Brandon Murphy as a defendant along with more claims.

In June 2023, the Company and Murphy ("Defendants") moved to compel arbitration and stay proceedings, seeking to enforce the arbitration provision in the Opt-In Plaintiffs' Independent Contractor Agreements ("Arbitration Agreement"). This matter was referred to the Magistrate Judge.

On October 13, 2023, the United States Magistrate Judge's Report and Recommendation ("R&R") recommended that the Court grant Defendants' motions to compel arbitration and stay proceedings pending the conclusion of arbitration between Defendants and the Opt-In Plaintiffs. Plaintiff has objected to the R&R. After considering

the entire record and conducting a de novo review, the Court will adopt the R&R and grant Defendants' motions to compel arbitration and stay proceedings.

LEGAL STANDARD

## I.   Objecting to a Magistrate Judge's report and recommendation.

A party may object to a Magistrate Judge's report and recommendations by filing written objections within 14 days after being served with a copy of the report and recommendations.[1] Failure to file written objections to the R&R within the required period bars that party from requesting that the district court review the R&R de novo.[2] A party's failure to timely object to the R&R also bars the party from seeking appellate review of proposed factual findings and legal conclusions accepted by the district court unless there is clear error to which no objections were filed.[3]

## II.   Compelling Arbitration under the Federal Arbitration Act.

The Federal Arbitration Act ("FAA") "embodies the national policy favoring arbitration."[4] The Fifth Circuit uses a two-step analysis when deciding a motion to compel arbitration.[5] First, the court must decide whether there is "a valid agreement to arbitrate," and second, "whether the dispute falls within the scope of that agreement."[6]

State contract law governs the scope and validity of an agreement. Kubala v. Supreme Prod. Servs., Inc., 830 F.3d 199, 202 (5th Cir. 2016). When determining whether a valid

---

[1] 28 U.S.C. § 636(b)(1).
[2] Id.
[3] Id.; Thomas v. Arn, 474 U.S. 140, 150–53 (1985); United States v. Wilson, 864 F.2d 1219 (5th Cir. 1989) (per curiam).
[4] Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006).
[5] Huckaba v. Ref-Chem, L.P., 892 F.3d 686, 688 (5th Cir. 2018) (cleaned up).
[6] Id.

arbitration agreement exists, Texas has no presumption in favor of arbitration.[7] Instead, the party seeking to compel arbitration must show that the agreement meets all necessary contract elements.[8] Under Texas law, a binding contract requires:

> (1) an offer;
>
> (2) an acceptance in strict compliance with the terms of the offer;
>
> (3) a meeting of the minds;
>
> (4) each party's consent to the terms; and
>
> (5) execution and delivery of the contract with intent that it be mutual and binding.[9]

Whether a signature is needed to bind the parties is a question of the parties' intent.[10] A court can decide intent as a matter of law.[11] In arriving at the true intentions of the parties, courts must analyze a contract's express language, harmonizing all provisions so that none are rendered meaningless.[12]

## DISCUSSION

Plaintiff makes two objections to the R&R. First, Plaintiff argues that the Company's signature was a condition precedent to the Arbitration Agreement becoming enforceable. Second, Plaintiff objects to the R&R's recommendation that this case be stayed pending arbitration. The Court handles each in turn.

---

[7] *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).
[8] Id. at 228.
[9] *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012) (cleaned up).
[10] *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (cleaned up).
[11] *Id.*
[12] *Id.*

I.      **The Arbitration Agreement is enforceable**.

"Texas law does not require that an 'employer must sign [an] arbitration agreement before it may insist on arbitrating a dispute with its employee'"[13] Indeed, "[s]ignatures are not required as long as the parties give their consent to the terms of the contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract."[14] Consent to the terms is not at issue here; the analysis hinges on whether the Company's signature was intended to be a condition precedent.

Under Texas law, "to make a signature a condition precedent to enforcement of a contract—including an arbitration agreement—the agreement must clearly and explicitly require a signature before it becomes binding."[15] An empty signature block is not enough to find an agreement unenforceable.[16] So there must be something more.

Specifically, as stated by the Fifth Circuit, the Arbitration Agreement "*must clearly and explicitly require a signature*."[17] Plaintiff believes that the Arbitration Agreement "provides unambiguous evidence of the Parties' intent to require both the employer and employee to sign as a condition precedent."[18] Yet simply stating there is "unambiguous evidence" that the Company's signature was required does not make it so.

---

[13] *Flores v. BJ's Rest. Operations Co.*, No. 23-50038, 2023 WL 6533452 (5th Cir. Oct. 6, 2023) (quoting *In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009) (orig. proceedings) (per curiam)).

[14] *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (cleaned up).

[15] *Flores*, 2023 WL 6533452, *2 (quoting *Firstlight Fed. Credit Union v. Loya*, 478 S.W.3d 157, 170 (Tex. App.—El Paso 2015, no pet.).

[16] *See, e.g., Trujillo v. Volt Mgmt. Corp.*, 846 F. App'x 233 (5th Cir. 2021) (per curiam) (unpublished) (holding that an arbitration agreement was still enforceable with only one of the parties' signatures because "there is nothing more than a blank signature block that speaks to the party's intent and there is no language that the parties needed to sign the agreements to give it effect").

[17] *Flores*, 2023 WL 6533452, *2 (emphasis added).

[18] Doc. 66 at 3.

Indeed, Plaintiff lays out 19 snippets from the Arbitration Agreement that he alleges the R&R "completely disregards."[19] Yet only one of the provided snippets "clearly and explicitly" requires a signature: "Any modification to this agreement will be effective only if it is in a writing signed by the party to be charged."[20] This is a sharp contrast to the provisions found in the agreement at issue in *Huckaba v. Ref-Chem, L.P.*[21] There, the *Huckaba* court noted that, along with an empty signature block, the agreement also contained three provisions with "express language [that] clearly indicates an intent for the parties to be bound to the arbitration agreement by signing."[22] One of those provision was "a clause prohibiting modifications unless they are 'in writing and *signed by all parties*.'"[23] That is quite different from the Arbitration Agreement here, which states a modification is effective "only if it is in a writing *signed by the party to be charged*."[24] So Plaintiff fails to show any provisions that "clearly and explicitly require" the Company's signature before the Arbitration Agreement could be enforced.

Without clear and explicit language requiring a signature, the Arbitration Agreement becomes more like the one in the Fifth Circuit's recent per curiam decision in *Flores v. BJ's Restaurant Operations Company*. Plaintiff, however, believes *Flores* "is clearly distinguishable because the agreements here, in addition to the ample language that requires signatures from both sides, also contains a signature line for Defendant."[25] Yet again—besides the lack of

---

[19] Doc. 66 at 7–8.

[20] *Id.* at 8.

[21] 892 F.3d 686 (5th Cir. 2018).

[22] *Id.* at 689.

[23] *Id.* (emphasis added).

[24] Doc. 44, Ex. 1 at 8 (emphasis added).

[25] Doc. 66 at 9.

"ample language that requires signatures from both sides"—even a brief reading of *Flores* counters Plaintiff's claims.

For instance, the *Flores* court noted that the arbitration agreement in that case contained "three peripheral clauses [that] mention BJ's signing the agreement."[26] That's not the case here. Likewise, even if the lack of a signature created some sort of ambiguity, the actions noted by the *Flores* court that "decisively" favored the employer are present here.[27] For instance, the Company prepared the Arbitration Agreement on its letterhead, keeping the agreement in the Opt-In Plaintiffs' personnel files, and now the Company seeks to enforce it against them after being sued.[28] "Texas courts have found that these considerations evince an employers' intent to be bound even when they did not sign arbitration agreements."[29] Accordingly, the Arbitration Agreement is enforceable. As a result, the Court will overrule Plaintiff's objections and adopt the R&R on this point.

## II.   A discretionary stay of the proceedings is proper.

Plaintiff also objects to the R&R recommendation that this Court grant "a discretionary stay as to all remaining plaintiffs in this case," pending the conclusion of arbitration between the Opt-In Plaintiffs and Defendants.[30]

The Court starts by noting that the R&R did not recommend a stay under the mandatory stay provisions of § 3 of the FAA. Rather, the R&R recommended a "discretionary stay."[31] The court's discretionary authority to issue a stay is "incidental to the

---

[26] *Flores v. BJ's Rest. Operations Co.*, No. 23-50038, 2023 WL 6533452 n.† (5th Cir. Oct. 6, 2023)
[27] *Id.* at *2.
[28] *Id.*; Doc. 44, Ex. 1.
[29] *Id.*
[30] Doc. 65 at 13.
[31] *Id.*

power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[32] A court's discretion in this area is broad, but "such control is not unbounded."[33] "Proper use of this authority 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'"[34] The party seeking a stay bears the burden of justifying a delay by making a "clear case of hardship or inequity in being required to go forward."[35]

Many courts in this circuit have also relied on the factors outlined by the Fifth Circuit in *Waste Management* when determining whether a discretionary stay is appropriate.[36] These three factors are: "(1) the arbitrated and litigated disputes must involve the same operative facts; (2) the claims asserted in the arbitration and litigation must be 'inherently inseparable'; and (3) the litigation must have a 'critical impact' on the arbitration."[37]

The Court is experienced with FLSA matters and sees various places where the *Waste Management* factors support a discretionary stay.[38] For example, all claimants allege they were misclassified as an independent contractor under the FLSA. For misclassification of

---

[32] *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Ambraco, Inc. v. Bosclip B.V.*, 570 F.3d 233, 243 (5th Cir. 2009).

[33] *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983).

[34] *Id.* (quoting *Landis*, 299 U.S. at 255).

[35] *Id.* (quoting *Landis*, 299 U.S. at 255).

[36] *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339 (5th Cir. 2004); *see, e.g., Broussard v. First Tower Loan, LLC*, No. CV 15-1161, 2016 WL 879995 (E.D. La. Mar. 8, 2016); *Mosaic Underwriting Serv., Inc. v. Moncla Marine Operations, L.L.C.*, No. 12-2183, 2013 WL 2903083, at *8 (E.D. La. June 12, 2013); *Suzlon Infrastructure, Ltd. v. Pulk*, No. 09-2206, 2010 WL 3540951, at *8-11 (S.D. Tex. Sept. 10, 2010); *Citgo Petroleum Corp. v. M/T Bow Fighter*, No. 07-2950, 2009 WL 960080, at *6-7 (S.D. Tex. Apr. 7, 2009); *Med-IM Dev., Inc. v. Gen. Elec. Capital Corp.*, No. 07-1618, 2008 WL 901489, at *9 (S.D. Tex. Mar. 31, 2008).

[37] *Waste Mgmt., Inc.*, 372 F.3d at 343 (internal quotation marks omitted).

[38] In fact, the Court has had three overtime wages cases under the FLSA go to a jury verdict just this year. *Keating v. Flowco Production Solutions*, LLC, MO:20-CV-122; *Kramer v. TNT Crane & Rigging, Inc.*, MO:22-CV-16; *Coates v. TNT Crane & Rigging, Inc.*, MO:22-CV-18.

independent contractors, the Fifth Circuit looks at the "economic realities" using five non-exhaustive factors:

> (1) the degree of control exercised by the alleged employer;
>
> (2) the extent of the relative investments of the worker and the alleged employer;
>
> (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer;
>
> (4) the skill and initiative required in performing the job; and
>
> (5) the permanency of the relationship.[39]

"The ultimate determination about whether a worker is an employee or independent contractor is a question of law. But the findings as to the five factors and the 'historical findings of fact that underlie [those] finding[s]' are questions of fact."[40] So the crux of each claimant's allegations are inherently intwined questions of law and operative facts.

There is also the question—if all claimants were misclassified as independent contractors—of whether the alleged misclassification was willful under the FLSA like Plaintiff claims.[41] "Under the FLSA, an employer who violates the overtime provisions is liable not only for the unpaid overtime compensation, but also for 'an additional equal amount as liquidated damages.'"[42] Willfulness is a question of fact.[43] So willfulness, which could at least double the amount of damages, is another fact determination that must be consistent across all Plaintiffs.

---

[39] *Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 365 (5th Cir. 2023).
[40] *Id.*
[41] Doc. 44 at 3 ("This is a Fair Labor Standards Act (FLSA) wage claim that stems from Defendant's willful misclassification of its oilfield laborer workforce as independent contractors.")
[42] *Singer v. City of Waco, Tex.*, 324 F.3d 813 (5th Cir. 2003) (citing 29 U.S.C. § 216(b)).
[43] *Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009).

In short, like this Court held just last year in *Streety v. Parsley Energy Operations, LLC*, not granting a stay would make it so "multiple opt-in plaintiffs will be seeking FLSA relief against [the Company] in two different forums based on the same theory."[44] That would create "a significant risk of inconsistent results" and "have a critical impact on the arbitration."[45] In sum, not staying the case would create a "clear case of hardship or inequity in being required to go forward."[46] Accordingly, the Court will overrule Plaintiff's objections and adopt the R&R's conclusion that a discretionary stay is appropriate.

### CONCLUSION

It is therefore **ORDERED** that the Court **ADOPTS** the R&R (Doc. 65) and **OVERRULES** Plaintiff's Objections (Doc. 66).

It is also **ORDERED** that Murphy Well Control, LLC's and Brandon Murphy's motions be **GRANTED** as to compelling Opt-In Plaintiffs Aschton Shropshire, William Pruit, and Ivan Salcido to arbitrate their dispute with the Defendants and **DENIED** as to the Company's request for attorney fees and costs connected to this motion. (Docs. 44, 52).

---

[44] *Streety v. Parsley Energy Operations, LLC*, No. MO:20-CV-00049-DC, 2022 WL 2783852, *9 (W.D. Tex. June 17, 2022), *appeal dismissed sub nom. Streety v. Parsley Energy Operations, L.L.C.*, No. 22-50644, 2022 WL 18301346 (5th Cir. Oct. 4, 2022).

[45] *Id.*

[46] *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983).

It is also **ORDERED** that this case be **ADMINISTRATIVELY CLOSED** pending conclusion of the arbitration proceedings. All pending motions, if any, are therefore **DENIED** as **MOOT**.

It is so **ORDERED**.

SIGNED this 31st day of October, 2023.

DAVID  COUNTS
UNITED STATES DISTRICT JUDGE